Good morning, your honors, and may it please the court, my name is Brad Sealing. I represent the appellant Supple LLC. The district court here erred in certifying a class of all California consumers over a period dating four years back from the filing of the original complaint that purchased Supple's joint dietary supplement. The court committed two errors. The first was that it made an erroneous finding that the net impression of Supple's advertisements was that the product was clinically proven to treat joint pain. That finding was critical to the court's conclusion that common issues predominated. Indeed, it was the common issue that the court determined justified class certification. The district court made that error that erred in various mediums over an extended period of time. It made that interpretation without any extrinsic evidence. It just made it on its own. That was the, I'm sorry, wasn't that the allegation in the First Amendment complaint? It certainly was the allegation. The alleged misconduct? It certainly was the allegation in the First Amendment complaint, but in a false advertising case, what the ads say is not based on an allegation. It's a factual issue. The court accepted that allegation as true in ruling on the motion to dismiss. Indeed, the court determined in ruling on the motion to dismiss that it was critical that the plaintiff was alleging clinically proven to treat arthritis, and that's why we proceeded beyond the motion to dismiss. That's not what the ads actually say. In fact, if you look in the record, you cannot find a single instance in which the ads say what the court interpreted them to say. No, but they say something very similar to that. To the extent that you take a look at ER-7, you see, R-glucosamine is clinically proven to treat arthritis. It's clinically to provide, pardon me, to rebuild damaged cartilage cells. R-chondroitin, that's clinically proven to reduce joint space narrowing, and that's clinically proven to reduce swelling and inflammation. The claims of clinically proven go to the circumstances and the conditions which produce joint pain, do they not? There's no question, Judge Bea, that the product is advertised as a product that promotes joint health. There's no question of that. The problem is- And if it's joint health, there isn't joint pain. Well, Your Honor, it may be, and again, this goes to the second issue of satisfied customers and the evidence in the record about the reasons why people may purchase a glucosamine supplement. It is not just people who are suffering from pain. It may be people who are interested, athletes who are interested in promoting joint health before they have pain. So this gets into the second area of the court's error, which is in ignoring the evidence- I guess what I'm saying is that there seems to be a uniform claim as to clinically proven effects of this beverage as to the conditions which produce joint pain and how they can be alleviated so that the claims are as to the circumstantial evidence, perhaps not to the conclusion of joint pain, but as to what produces joint pain. Well, Your Honor, I would disagree with that, and I would point to Ms. Cabral's own briefs in this court. Page 7, they provide what they say is an illustrative example of the online advertising, and they single this out. So this is illustrative. This is what the court is supposed to see that the advertising says and conveys to people. Nowhere in this illustrative ad does it say clinically proven to do anything. It doesn't talk about clinically proven to treat joint pain. It does not make that statement, and that's the problem, Your Honor. Your bottles of the formula, don't they say clinically proven on them? They do say clinically proven ingredients. That is correct, but this is not a product- And isn't the ingredient in your product the glucosamine hydrochloride, not the glucosamine sulfate? Isn't that the- there's a difference in the product. And you stated earlier that some people buy glucosamine to prevent joint pain for joint health, but that's the product that's clinically proven to show that. It's not the product in your drink, isn't it? Again, I would disagree with that assertion of the record. There is record testing of both glucosamine hydrochloride and glucosamine sulfate, both finding benefits for particular types of arthritis, not generally for joint pain, not generally for, say, carpal tunnel syndrome, or any of the other reasons this is advertised for people who might be interested in it. And again, if this is an illustrative example, this website, and it doesn't have that message, what the district court had to do here, and what the district court did that was wrong, was to follow argumentative exhibits prepared by counsel at the hearing and said, yes, I get the message here. I get that the net impression here is clinically proven to treat joint pain. This is a very unique class action case. In most cases we can sit here and show the court, as Ms. Cabral's counsel has tried to do in their brief, and say, here's the advertising that we say is false. We got to a hearing on class certification, and the court had to ask, what is the message here? What is the message that's being conveyed? And Cabral's counsel said, the message here is that it's clinically proven to treat arthritis. Now, that's not even a finding that they're attempting to defend here on appeal. What they've said on appeal is, this is, you know, there's no doubt the ads say it will do something. We say it doesn't do anything, and therefore we can proceed to certification. Let's admit that if that were the claim that had been alleged in the pleadings, under occurrence, which this court says a false advertising case requires 9B specificity in pleading, that claim that it does something would not have made it past the pleading stage. So it was critical for Cabral to take the position that this is clinically proven to treat arthritis. And that's an issue they've run away from on their briefs, to just say, look, there's a common message here. I thought you started off by saying clinically, their burden was to show clinically proven to treat joint pain. The district court, that was the district court's finding, which is actually different than the finding that, than the argument that Cabral had been making from the outset of the case. Cabral had said from the outset of the case, and in response to a direct question from the judge, what do these ads mean? What do they say? The statement was clinically proven to treat arthritis. And the court, clinically proven to treat arthritis. That was from the transcript of the hearing. It is also throughout the briefing on certification. It's in the original complaint. Now what you're saying is that now the position is that, the ad say the beverage does something, but the beverage does nothing. It's a placebo. That's correct. And that's not specifically enough to be a common issue of fact for 23? No, not on this evidentiary record, Your Honor, because again, the evidence is, and the studies that they rely on, focus on arthritis, which is why they took the position that the statement does focus on arthritis and only on particular types of arthritis. So there is no evidence in the record, and it would be an individual issue if someone doesn't have one of the types of arthritis that's studied in one of those studies. If someone doesn't have knee arthritis, arthritis in the knee, if that's what the study says, if they have some other condition, they take the beverage and they conclude that they see benefits from it. Efficacy in this case becomes an individual question. Again, because the clinical evidence that they rely on is very narrow, and they've tried to fit this case from the beginning into the clinical evidence. The problem is that's not what the ads say. That isn't what the court to do that. Under Williams, this court says district courts can't simply adopt their own interpretation of what an ad means. The California Supreme Court says the same thing in Committee on Children's Television. In a case where you're relying on a net impression theory, where you can't put up on a blow-up chart, here's the false statement, here's where it says clinically proven to treat arthritis, where you can't show that, you need to have extrinsic evidence. You need to have a survey. And they could have done that. They could have put a survey in to say, we watched this infomercial and the message we get is as follows. The problem is there is no uniform message. There's multiple messages, reasons why this is marketed. I think you should want, you said there's two points. The second one you referred to a moment ago as being satisfied customers. Explain to me what the importance of that is. Well, this goes to, and I think the best description of this is in Judge Walter's certification order in the Moeb case, which is another glucosamine class action case. And this relates to the question of why people take the supplement, why people would take a glucosamine supplement. It isn't just because, and there is no evidence that everyone in this class is an arthritis class, suffers from joint pain. As we, the evidence we submitted from the Gallup survey, this is a product that's been marketed, glucosamine, chondroitin supplements for joint health have been marketed for years and years and years. And so people have understandings already about the benefits of these products for themselves. The fact that multiple people, 48% of this class, made multiple purchases of this product indicates that something else is going on, that these are not people, this is not like a case, the Stearns case, where everyone went through the same allegedly deceptive enrollment system and then didn't use the product. These are people who are getting a $100 shipment that weighs 20 pounds and it's something that's to be taken over a period of weeks and they didn't realize that these people were in some sense satisfied or that it may have been effective for them. But the court did nothing to rebut that inference, cited no evidence to rebut the inference, and the only thing that was presented in response was argument where Ms. Cabral indicates that, well, maybe people forgot to cancel the shipment. And that's simply argument without evidence. So the presence of 72% of the sales coming from people who bought multiple times, multiple shipments, up to 10 different shipments of the product, that also indicates that individual issues. That would tend to rebut what you say is the position on appeal that it does nothing. That's correct, Your Honor. That's correct, Your Honor. And again, the studies that have been produced, and this was not a big topic of discussion in the district court, but the studies that have been produced does not say it does nothing for anything. And that's essentially their position now. And with that, unless you have any questions, I'd like to reserve the balance of my time. Good morning, Your Honors. Deepak Gupta for the plaintiffs. I represent the plaintiffs in this interlocutory appeal, and our position is not any different from the district court's finding with regard to the message. I want to make that clear at the outset. We used some shorthand in the brief to describe the position, but we're not retreating one inch from what the district court said. And the district court did not abuse its discretion in certifying this straightforward consumer fraud class action. Can you point to me any place in the record where there's a claim that the beverage was clinically proven for the treatment of joint pain? Yes, Your Honor. We did a search through the record. We found 166 individual instances in which that concept is specifically expressed. Would you kindly, Mr. Gupta, think for a moment the question I asked you? Yes. Let me turn you to page... I want to ask you again, where is it said that there was advertising, where is it said in the record, where was the advertising on the website or by general means, literally, to use a phrase that you use in Washington all the time, literally that said, clinically proven for the treatment of joint pain? I think the best thing I can do is take you to the actual record and read it to you. So if you look at the infomercial, the 2007 infomercial, which the vast majority of the class saw, and the district court found that, if you look at page 1206, the maker of the product says, Supple is backed by 30 years of extensive clinical research. There is nothing as proven as what's in Supple. These things are disease-modifying drugs, the active ingredients. Then on the next page, he says, Supple has active ingredients that are the strength of a natural disease-modifying drug in over 40 countries. They have over 35 clinical trials supporting its effectiveness. Nothing is as powerful, nothing is as effective, nothing is as proven as what's in Supple. There is not a single product, not a drug, not a dietary supplement, not a natural remedy, anything that has the level of clinical support and evidence supporting what works in Supple. That's why people try Supple. They drink just a bottle a day. They have no more ability, no more pain, and no more suffering. The next page, page 1208. Our glucosamine is clinically proven to rebuild damaged cartilage cells. It actually creates new cartilage cells and protects existing cartilage. It has pharmaceutical grade chondroitin. It's our chondroitin that's clinically proven effective. Take out your pencil and write the following phrase. Sure. Clinically proven to treat joint pain, as example one. Second, clinically proven to treat arthritis. Do either of those words, or those phrases, appear in the record as having been said by Beveridge? Yes, they do. And we have a chart in the record, page 1670 of the record, that shows all of the statements along those lines in the television advertising. It's just, the record is replete with this. It's clinically proven to reduce joint space narrowing, to reduce swelling and inflammation. I've read that. I guess we're not on the same wavelength. I'm looking for actual words. So Sealing was saying, look, the court got it wrong. We never represented that the Beveridge was clinically proven for treatment of joint pain, or clinically proven to treat arthritis. And I'm saying to you, here's your chance, Mr. Gupta, to say, Mr. Sealing, you've got it wrong. Here's what your ad said. I mean, I thought that's precisely what I was reading to you. You were reading a lot of things around it. You have a lot of circumstantial evidence. I'm talking about where the word was used. Clinically proven to treat, for treatment of joint pain. I'll read you from page 1209, the next page from what I was reading. Clinically proven individually to promote healing and to actually promote joint healing and bone healing and bone health. Now, I mean, and this is in the context of an ad that is talking throughout about joint pain. And, you know, I think it's probably worth talking about what the law is on this. The In Re First Alliance. Oh, you want to get away from the facts? Let's talk about the law. No, I don't. But I want to explain to you why I think the Ninth Circuit's case law is quite clear that you don't look for, because it's too easy to evade a class action simply by altering the wording. In the In Re First Alliance case, you had a case involving mortgage salesmen and they were making oral representations. They were going out and making sales pitches. There was no uniform single advertising that the consumers were all exposed to as they are here. And the court said, even though there's no specific lie there, this pattern, because the salesmen were all using the same pattern, the same strategy, that was sufficient for commonality under the Ninth Circuit's case law. And in an opinion by Judge Fernandez, the Stearns versus Ticketmaster case, the opposite end of the spectrum is a situation in which the defendant is exposing consumers to quite disparate statements from quite disparate representatives of the defendant. This is an easy case, because the consumers have all been exposed to the same advertising. The vast majority of the consumers also saw the same specific infomercial. So the district court almost didn't need to identify this specific message. Nothing in the case law says that the district court... Under 23B, it needed to identify the common issues of fact and law. Absolutely, Your Honor. And what it did was to say the common issue of fact, as I understand it, was that there was a representation here that this was clinically proven to treat joint pain or clinically proven to treat arthritis. And Mr. Seeling tells us those words were never used. This court's case law is so clear that that's exactly what the cases don't require, which is specific wording. And that's the Alliance case. The In re Alliance case, and let me just read you some of the language there. That First Alliance fraudulent system of inducing borrowers to agree to unconscionable loan terms did not consist of a specifically worded false statement repeated to each and every borrower does not make First Alliance immune from class-wide accountability. The class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of the misrepresentations across the class of defendants. That's why I think it's helpful to talk a little bit about the law, and then I want to get back to the facts. Very helpful to your case. Yes, absolutely. And in that case at page 985, when the court was describing the facts, it said that the strategy there did not instruct the loan officers to offer any specific lie to the borrowers. Instead, what they were doing was obfuscating points and interest rates. They were presenting the information in a misleading manner. But what mattered is that there was an overarching strategy that was in common. At page 991 of In re First Alliance, the court said what mattered is that the exact wording of the oral misrepresentations was not the predominant issue. It is the underlying scheme that demands attention, the center of gravity of the fraud. Now I think this is a... So what is the misrepresentation that you're alleging? We are alleging... I think the district court got it just right. Yes, it's worded in slightly different ways, but there's no question that if you read the scripts of this infomercial, if you look at the web advertising, it is saying this product is clinically proven to alleviate joint pain. I mean, there's no other real message. It's on every single page, and that's why I said we... And whether it's from arthritis, or is there an issue as to where it comes from? There are word games being played with the word arthritis and joint pain. Joint pain... Arthritis is just an umbrella term that means a family of 100 different diseases that reflect joint pain. So that's exactly the kind of word game that I think the In re First Alliance court was saying. We don't allow the defendants to play word games and get out of class action, particularly when you have here a finding by the district court that's gone uncontested. This is at Joint Appendix 10... Sorry, at 8. The record demonstrates that class members necessarily would have been exposed to Supple's advertising, and that advertising took two forms. It took the form of the infomercial, which the 2007 infomercial reflects almost the entire class, and then a slightly revised infomercial, and the web advertising, which has the same kinds of claims on almost every page. And this is a situation also in which the defendant keeps records, so we know precisely what advertising the consumer saw and how they came to the defendant, and this product is not sold in stores. So this actually makes it a much easier class to certify than many other kinds of consumer fraud class actions. We know that all of these people were exposed to this advertising. We know what the advertising said. So we know that there's a common issue if what we're alleging is that the advertising is deceptive. That's why I say that the district court didn't really have to, under this court's case law, identify a specific message. I think it was helpful that the district court did so, because... What do you say to Mr. Seelig's point that on appeal now, you're no longer aligning yourself with the trial court's finding that the representation was clinically proven to treat joint pain or clinically proven to treat arthritis. What you're saying is the representation was that this beverage did something to affect the conditions and it doesn't do anything. Right. I think that's not right. We are not retreating from the district court's holding at all. I think it's just shorthand that appears in our brief to try to describe this. And he said at page, excerpts of record nine, common sense dictates that the alleged misrepresentations, and then he says in parentheses, practically speaking, that the beverage would not do what it was advertised to do, would be material not only to the reasonable purchaser, but to every purchaser. And that parenthetical where the district court said, you know, practically speaking, this thing doesn't do what it's advertised to do. That same kind of shorthand appears in our brief, but that doesn't mean that we've changed our position at all. Our position is that all of these class members were exposed to this advertising. We allege that the chief claims made throughout the advertising, which is that the product is clinically proven effective to treat joint pain, that that's just not so. And in fact, the evidence is quite the opposite. And that will be the issue on the merits, right? And the district court, I think, got this quite right and said that the question is subject to common proof, the scientific evidence that the beverage is clinically proven effective or not will have to be tested. And that will be, that will answer the question for the entire class in one stroke, which under Walmart versus Dukes shows you that this is a class action. It's held together by what the Supreme Court called the glue that you need to show commonality and predominance. And in fact, this isn't even a case where you have to do a predominance weighing because you've got some common issues and some individual issues. This is really a case, that's why I said at the outset, this is the prototypical consumer fraud class action that I think the architects of Rule 23 had in mind. If you didn't have a class action in this situation, it would be very hard to imagine that an individual litigant could come forward and marshal the necessary scientific evidence and prove a fraud claim here. But it's precisely the sort of case the drafters of the rule had in mind for class treatment. And I think the district court, it would be hard to improve on the decision. The only thing the district court didn't do, I suppose, is do what we did and identify the 166 individual times in which this clinically proven claim is made in the record, principally in volume six of the record excerpts. And to save you and your law clerks some time, I'd be happy to provide a post-argument letter with those citations. That would be helpful. Ultimately, the standard review here for that finding is clear error. As you've said in your cases, the factual finding would have to be illogical, implausible, or without support in inferences in the record. Frankly, I have trouble figuring out how you could draw any other inference from the record. And so that's certainly not a scenario in which there's clear error. If there are no further questions, I'll sit down. Thank you. Thank you. Mr. Cecili, you have some time for rebuttal. Not much, but you have some time. Thank you, Your Honor. In a false advertising case, the ads matter. What the ads actually say matters. Here, what the court did is looked at ads and said, not that this is what they say, he said this is what they mean. That was an error. The court did not have the ability to do that, and the court legally did not have the ability to do that, shouldn't have done that, and factually the court needed some extrinsic evidence to help him. He can't just say this is what I think, dancing around all these ads, I'm going to put them all together and say common sense dictates that practically speaking this is what they mean. It's not what they say. The first alliance case is a case where there was a very specific deception in the scripts that the agents were supposed to follow. They didn't necessarily have to use the same words, but they had to present evidence about the points in a certain way. So that's not a controlling case. I would submit that this court's decision in Maza, which follows the decisions in Cohen, state court decisions in Cohen, Vioxx, Pfizer, all the cases we've cited in the brief where it says when consumers aren't exposed to the same ads, there's not commonality, there's not predominance. Here we go one step further. It's not just that they're exposed to ads. What they are saying here, and the common issue the district court found is not that they're exposed to ads, but they interpreted those ads in a particular and a peculiar way. The words clinically proven to treat arthritis, clinically proven to treat joint pain do not appear in the record in that way. That was an interpretation that the court made, and it didn't have the ability to do that. And I see my time's expired. Thank you very much for a very interesting and well-presented argument on both sides. Thank you. The case of Cabral v. Supple, LLC is to the right.
judges: Marquez, Fernandez, Bea